FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM
NYSCEF DOC. NO. 1

INDEX NO. EFCA2017002123
RECEIVED NYSCEF: 09/07/2017

STATE OF NEW YORK : SUPREME COURT
COUNTY OF BROOME
--------------------------------------------------------------x
HEMYAR A. ASHABI, d/b/a YELLOW DELI,

              Plaintiff,

    -against-

UNITED STATES OF AMERICA,

              Defendant.

--------------------------------------------------------------x

**SUMMONS**

Plaintiff designates Broome County
as Place of Trial based on
Plaintiff's residence

TO THE ABOVE NAMED DEFENDANT(S):

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's undersigned attorney within twenty (20) days after service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: September 7, 2017
       Binghamton, New York

Plaintiff's business address: 121 Susquehanna Street, Binghamton, New York 13901

Defendants' business addresses: United States of America, 950 Pennsylvania Avenue, NW, Washington, DC 20530

Ronald R. Benjamin, Esq.
**LAW OFFICES OF RONALD R. BENJAMIN**
*Attorney for Plaintiffs Hemyar A. Ashabi, d/b/a*
*Yellow Deli*
126 Riverside Drive, P.O. Box 607
Binghamton, New York 13902-0607
(607) 772-1442

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 2

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

STATE OF NEW YORK
SUPREME COURT: COUNTY OF BROOME
-----------------------------------------------------------------\
HEMYAR A. ASHABI, d/b/a YELLOW DELI,

                             Plaintiff

          -against-

UNITED STATES OF AMERICA,

                         Defendant
-------------------------------------------------------------\

COMPLAINT

Index No.:

    Plaintiffs Hemyar A. Ashabi, d/b/a Yellow Deli, by and through the Law Office of

Ronald R. Benjamin, as and for their Complaint against defendant, herein allege as follows:

    1.    Plaintiff Hemyar A. Ashabi (hereinafter "Yellow Deli") is duly certified to do

business under an assumed name pursuant to §130 of the New York State General Business Law,

and conducts such business under the assumed name "Yellow Deli", which business is located at

121 Susquehanna Street, in the City of Binghamton, County of Broome, and State of New York.

    2.    Defendant United States of America, through its Department of Agriculture, Food

and Nutrition Service ("FNS"), is responsible for the administration of the supplemental nutrition

assistance program ("SNAP"), including but not limited to monitoring the activities of retailers in

the program, including but not limited to revoking their right to participate in said programs.

    3.    That the plaintiff Yellow Deli is a retailer within the definition of the SNAP

regulations and was approved as a participant in the program on or about November 2013.

    4.    That Yellow Deli operates a grocery store in a minority, low-income

neighborhood and provides valuable services to the community in selling food and other items to

members of the community.

    5.    In 1964, Congress permanently established what was then called the Food Stamp

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 2

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

Program [the Food Stamp Act of 1964, *Pub. L. No. 88-525, 78 Stat. 703 (1964)*], which aims both to feed low-income individuals and to strengthen the nation's agricultural economy. (*see 7 U.S.C. §2011*), and authorizes the Secretary of Agriculture to promulgate regulations to implement the program. *Id. §§ 2013( c ), 2021(a)( 2 )*. In 1996, Congress set a deadline for states to replace the original paper coupons with electronic benefit transfer ("EBT") systems, which use debit-type cards to deduct benefits from a central location. *See id. §2016(h)*. Upon the completion of this change in 2008, Congress renamed the program the Supplemental Nutrition Assistance Program. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, § 4001(b). 122 Stat. 923. 1092 (2008).

6.    That  SNAP recipients constitute sixty [60%] percent of Yellow Deli's overall sales generated on a monthly basis, and as such are an integral part of their business.

7.    That the right to serve SNAP recipients by participating in the program as a merchant is a valuable property right and that Yellow Deli cannot be deprived of the same without being afforded due process of law.

8.    That on or about May 2, 2017, the FNS charged Yellow Deli with trafficking as defined in section 271.2 of the SNAP regulations.

9.    That on or about August 8, 2017 a final administrative decision and was reached by the USDA, permanently disqualifying plaintiff from participating as an authorized retailer in the SNAP program. (Said decision is annexed hereto as **Exhibit A** and incorporated herein by reference).

10.    That the administrative decision revoking plaintiff's license was based largely if not entirely on electronic benefit transfer (EBT) transaction data generated between October, 2016 and March, 2017, which the USDA contends exhibit patterns indicative of trafficking.

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM        INDEX NO. EFCA2017002123
NYSCEF DOC. NO. 2                                     RECEIVED NYSCEF: 09/07/2017

namely. (1) there were an unusual number of transaction ending in the same amount of cents: (2) multiple purchase transactions were made too rapidly to be credible: (3) multiple transactions from individual benefit accounts were made within unusually short time frames: and (4) excessively large purchase transactions were made from recipient accounts.

11.    That when a charge letter is issued it amounts to an administrative determination that a retailer has engaged in trafficking, based on a computerized program never identified, in which the USDA scans all retailer transactions on a monthly basis and uses predefined criteria or patterns for potential fraud detection. See Exhibit A, p.9.

12.    The USDA further contends that the mapping software translates the information into GL codes that identify a retailer for further investigation, and that the actual case of trafficking is prepared by retail operations staff on the basis that the transaction patterns cannot be explained by the store type, facility layout, inventory, or other factors.

13.    That none of the aforesaid information was communicated to Yellow Deli, and the USDA does not dispute that Yellow Deli's counsel sought information including a request that the agency provide the "raw data used to arrive at its conclusions" and without being provided the agency analysis, Yellow Deli is required to speculate upon what interpretation or theory of the data resulted in the conclusion that Yellow Deli was engaged in trafficking. See Exhibit A, p.5.

14.    In its final administrative decision, the USDA explains the rationale for denying the plaintiff this data and any discovery at all, based on several assumptions which Yellow Deli contends violate Due Process of Law guaranteed by the Fifth Amendment to the United States Constitution.

15.    The USDA first takes the position its decision is neither a criminal nor civil

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 2

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

action, but an administrative action imposed as a result of evidence of SNAP violations (Exhibit A, p. 10 ), and its belief that SNAP participation is "an administrative privilege, granted upon proof of eligibility and continued proof of compliance with governing law and regulations".
Exhibit A, p. 11.

16.     That the USDA's conclusion that participation in the SNAP program as a retailer is a privilege is clearly erroneous, in that it is a valuable property right protected by the Due Process Clause of the Fifth Amendment, that requires both notice and opportunity to be heard before the government can effectuate a deprivation of that property, and the mere fact that the Act or the implementing regulations are silent on the extent of the process due, does not in any respect diminish the fact that the Agency must meet minimal constitutional requirements.

17.     That the Agency considers its charge letter to be an actual determination that a retailer is trafficking, while at the same time it claims that it is only after careful and complete analysis of data and information from which appropriate conclusions are logically derived, that it will issue a charge letter.

18.     That the charge letter itself is a sham with respect to affording notice to a retailer as to what precise conduct engaged in constitutes trafficking, or otherwise violates governing laws and regulations of the program.

19.     That indeed, the USDA considers the notice provided to Yellow Deli a second level of administrative review, in which aggrieved persons have an opportunity to present their position to an impartially designated reviewer, which is impossible, since the notice given is insufficient to enable Yellow Deli enough information to muster up the defenses it would have available to refute the Agency's conclusions.

20.     That it was only after receiving the final Agency decision that Yellow Deli learned

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 2

INDEX NO. EFCA2017000123

RECEIVED NYSCEF: 09/07/2017

the USDA concluded Yellow Deli had many more transactions then did six (6) other convenience stores located within less than a one (1) mile radius of Yellow Deli.

21.   That this conclusion is clearly erroneous, in that there are not six (6) convenience stores located within a one (1) mile radius of Yellow Deli, and to the extent there are stores that are attached to gas stations, the clientele and location of said gas station stores is clearly distinguishable and not comparable to that of Yellow Deli.

22.   That the subject Yellow Deli transactions can readily be explained by Yellow Deli's location in a low income area, where many residents lack access to transportation to reach supermarkets in their area, and that gas station stores, by their very nature, attract customers who have no such transportation constraints.

23.   That the aforesaid example demonstrates the need for discovery to flush out the Agency's actual factual predicate for reaching its conclusions.

24.   That the USDA contends it has data that demonstrates 506 households, or sixty-three (63%) percent of SNAP card holders shopping at Yellow Deli, made a transaction at a large grocery or superstore within one day of making a purchase at Yellow Deli, and that 432 households, or eighty-five (85%) percent, made a SNAP transaction within three (3) days of shopping at Yellow Deli. See Exhibit A p.7. This is another example of not only data that was not provided, but that without a full picture, does not provide accurate information upon which it can be reasonably concluded there was trafficking being carried out by the plaintiff.

25.   That none of the above information was provided to the plaintiff, leaving them wholly unable to muster the facts to refute the USDA's conclusions.

26.   The USDA seeks to justify the sham hearing afforded Yellow Deli by noting that it eliminated in person meetings on September 8, 2003, and that its determination is neither a

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM
NYSCEF DOC. NO. 2

INDEX NO. EFCA2017002123
RECEIVED NYSCEF: 09/07/2017

criminal or civil action but an administrative action, which the Agency contends is taken if there was evidence of SNAP violations. Exhibit A, p.9. Indeed, USDA goes on to note that the review process it follows to impose adverse action does not include an assessment of the constitutionality of their conduct and in fact flatly states it does not have authority to assess whether or not its conduct conforms to constitutional mandates.

27.    Wholly aside from the issue of guilt, the Agency, while acknowledging it has authority to impose a civil penalty instead of permanent revocation, refused to do so, because, it claims Yellow Deli failed to meet the requirements to qualify for the same. See Exhibit A, p. 11.

28.    That if in fact Yellow Deli is guilty of one or more violations, it should not suffer the extreme penalty of permanent revocation, since there is clearly a lesser penalty that would both satisfy the government's interest in disciplining retailers who contravene the programs rules and regulations, while accommodating Yellow Deli's interest in remaining in business and providing a valuable service to the community which is carried out in its day-to-day operations.

29.    That plaintiff will suffer and has suffered irreparable harm as a result of the revocation, in that upwards of sixty (60%) percent of all of their customers are SNAP recipients, and the USDA is immune from damages if its decision turns out to be erroneous, leaving plaintiff with no remedy at all.

30.    That plaintiff has no adequate remedy at law.

31.    That plaintiff, in addition to being entitled to the remedy of having defendant's decision reversed, is entitled to an order rescinding the revocation pending final decision by this Court.

WHEREFORE plaintiff respectfully requests that the Court:

A.    Reverse the decision of the Agency and order that Plaintiff be restored to the list of eligible retailers for the purpose of participating in the SNAP program.

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 2

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

B.   Award plaintiff reasonable attorney fees together with the costs and disbursements of this action.

C.   Award Plaintiff such other and further relief as the Court deems just and proper including but not limited to enjoining defendant from enforcing its decision to revoke Plaintiff's participation in the SNAP program.

Dated: September 7, 2017
        Binghamton, New York

Ronald R. Benjamin
**LAW OFFICE OF RONALD R. BENJAMIN**
*Attorneys for Plaintiffs Hemyar A. Ashabi, d/b/a*
*Yellow Deli*
126 Riverside Drive, P.O. Box 607
Binghamton, New York 13902-0607
(607) 772-1442

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

# Exhibit A

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM
NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123
RECEIVED NYSCEF: 09/07/2017

**United States
Department of
Agriculture**

**USDA**

Food and
Nutrition
Service

Administrative
Review Branch
4ᵗʰ Floor
3101 Park
Center Drive
Alexandria, VA
22302

Telephone:
(510) 775-3083

Fax:
(703) 305-2821

August 8, 2017

Ronald R. Benjamin, Attorney
Law Offices
126 Riverside Drive
Binghamton, NY 13902

RE:   Hemyar Ashabi, Owner
      Yellow Deli
      121 Susquehanna Street
      Binghamton, NY 13901-4001

Case C0199535

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) in response to your request for administrative review. The decision includes a statement regarding your client's relevant rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a finding that a permanent disqualification from participating as an authorized retailer in the Supplemental Nutrition Assistance Program was properly imposed against Yellow Deli by the Retailer Operations Division.

Sincerely,

M. Viens
Administrative Review Officer

Enclosure - Final Agency Decision

1

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM
NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123
RECEIVED NYSCEF: 09/07/2017

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**
**Alexandria, VA 22302**

Yellow Deli,
Appellant,

v.                                                      Case C0199535

Retailer Operations Division,
Respondent.

## FINAL AGENCY DECISION

The record indicates that Yellow Deli (Appellant) committed violations of the Supplemental
Nutrition Assistance Program (SNAP). It is the decision of the USDA that there is sufficient
evidence to support a finding that the permanent disqualification from participation as an authorized
retailer in the program, as initially imposed by the Retailer Operations Division, (Retailer
Operations) was appropriate.

## ISSUE

The issue accepted for review is whether Retailer Operations took appropriate action, consistent
with 7 CFR § 278.6(a), (c) and (e)(1) in its administration of the SNAP, when it assessed a
permanent disqualification against Appellant.

## AUTHORITY

7 U.S.C. § 2023 and its implementing regulations at 7 CFR § 279.1 provide that "A food retailer or
wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . .
may file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

By Charge letter dated May 2, 2017, Retailer Operations informed the owner that it had compiled
evidence that the firm had violated the Supplemental Nutrition Assistance Program (SNAP)
regulations. The letter informed the owner that analysis of records revealed Electronic Benefit
Transfer (EBT) transactions that "establish clear and repetitive patterns of unusual, irregular, and
inexplicable SNAP activity for your type of firm." The letter of charges states that the sanction for
trafficking is permanent disqualification.

The record shows that Retailer Operations was contacted by "Maria" by telephone on May 3, and
that Appellant provided invoices on May 11, 2017.

2

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

Retailer Operations issued a Determination letter dated May 17, 2017. This letter informed Appellant that it was permanently disqualified from the SNAP in accordance with Sections 278.6(c) and 278.6(e)(1) of the SNAP regulations. Retailer Operations considered Appellant's eligibility for a civil money penalty (CMP) according to the terms of Section 278.6(i) of the regulations however, Appellant was not eligible for the CMP because insufficient evidence was submitted timely to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent violations.

By letter dated May 26, 2017, the owner, via counsel, appealed Retailer Operations' determination and requested administrative review of this action. The appeal was granted by letter dated June 1, 2017.

By email dated June 2, 2017, this office referred the appeal to the FOIA office since it appeared to include a FOIA request. By email dated June 5, 2017, the FOIA office informed this office that it would process the forwarded appeal as a FOIA request. By email dated June 5, 2017 this office noticed Retailer Operations that there was a FOIA request on this matter.

This office received a letter dated June 2, 2017 from counsel noting his request for discovery and stating that he took the June 1, 2017 acknowledgement letter as a "form letter." He also stated that once he had a response to the discovery his intent was to submit additional materials.

This office received a copy of a June 15, 2017 letter from counsel to the FOIA office regarding the June 30, 2017 target date for any discovery documentation that FOIA was to produce, and requested an extension to submit supporting documentation. By June 15, 2017 email to this office, counsel's staffer requested a time extension, with an attachment provided. This office could not open the attachment. On June 19, 2017 this office emailed counsel's staffer that the attachment could not be opened. By email dated June 20, 2017, the staffer emailed the letter counsel had addressed to the FOIA office requesting any extension. By email dated June 20, 2017, this office advised counsel's staffer that counsel would have 21 days after receipt of the FOIA reply to respond in this matter.

By email dated June 20, 2017, Retailer Operations provided a response to the agency FOIA office on this case. The FOIA office provided this office with delivery information of the FOIA to counsel on June 28, 2017. By email dated June 28, 2017, this office requested that counsel's office acknowledge that the FOIA reply was delivered and that any additional information was to be in receipt by this office no later than July 19, 2017.

A letter dated June 30, 2017 from counsel to the Retailer Operations Section Chief was received by this office July 25, 2017, after having been misrouted. By email dated July 26, 2017 this office noticed counsel that discovery, an in-person hearing, and cross examination are not elements of the administrative review process. An extension was granted for information to be received by August 2, 2017.

By letter dated August 2, 2017, counsel asked to join two cases. He reiterated that the refusal to provide information concerning who and how the conclusions were reached based on the data identified was a due process denial. He stated he did not intend to provide any additional information. By email dated August 2, 2017, this office informed counsel that the two cases would be treated separately in accordance with the administrative process.

3

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

## STANDARD OF REVIEW

In an appeal of an adverse action, the Appellant bears the burden of proving, by a preponderance of the evidence, that the administrative action should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than not true.

## CONTROLLING LAW AND REGULATIONS

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 U.S.C. § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Sections 278.6(a) and (e)(1) establish the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern in the event that personnel of the firm have engaged in trafficking SNAP benefits.

7 CFR § 278.6(e)(1) reads, in part, "FNS shall disqualify a firm permanently if personnel of the firm have trafficked as defined in § 271.2." Trafficking is defined, in part, in 7 CFR § 271.2, as "the buying or selling of SNAP benefits for cash or consideration other than eligible food."

7 CFR § 271.2 states in part that, "Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food products prepared for immediate consumption."

7 CFR § 278.6(a) states that "FNS may disqualify any authorized retail food store ... if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an *electronic benefit transfer system...*" (*emphasis added*)

## SUMARY OF THE CHARGES

The issue in this review is whether, through a preponderance of evidence, it is more likely true than not true that the questionable transactions were the result of trafficking. The charges on review were based on an analysis of the electronic benefit transfer (EBT) transaction data during the period of October 2016 through March 2017. This involved four EBT transaction patterns that are indicative of trafficking:

1. There were an unusual number of transactions ending in a same cents value.
2. Multiple purchase transactions were made too rapidly to be credible.
3. Multiple transactions made from individual benefit accounts within unusually short time frames.
4. Excessively large purchase transactions were made from recipient accounts.

4

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM
NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123
RECEIVED NYSCEF: 09/07/2017

## APPELLANT'S CONTENTIONS

The following may represent a brief summary of the contentions in this matter however, in reaching a decision, attention has been given to all contentions presented, including any not specifically recapitulated or reference herein.

- I request I be supplied with the raw data used to arrive at the conclusion in the May 2, 2017 letter.
- I believe the result reached by the agency stems from cherry picking rather than an analysis of my clients' clientele.
- Without the agency's analysis you are requiring my client to speculate on what theory is being employed to reach the conclusion that somehow translates into trafficking or some other violation.
- The 10 calendar day requirement to respond is not sufficient to analyze my client's record, interview clients and be able to match some of the transactions the agency finds unusual or as outlined evidence of trafficking. I reserve the right to supplement this response prior to any hearing.
- I demand I be afforded the opportunity to cross examine the decision making who [sic] concluded that my client was trafficking.
- The agency's analysis may be redlining in the form of racial discrimination prohibited and the various federal statutes as well as the Constitution.
- We make a claim of racial discrimination, absent some proof that the statistical analysis used to reach the erroneous result that this trafficking took place was racially neutral or in the alternative that you provide evidence of a legitimate business reason underlying analysis.
- Invoking FOIA exemption number five, may well apply if this were a FOIA request, but it is not. I am demanding the information as a matter of due process, notice and opportunity to be heard which is guaranteed by the Constitution, including but not limited to the 5th Amendment thereto.

## ANALYSIS AND FINDINGS

### Charge letter Attachments

Retailer Operations presented a case that Appellant trafficked SNAP benefits. Each Attachment furnished with the Charge letter represents the questionable and unusual patterns of SNAP transactions indicative of trafficking which were conducted at Appellant during the review period. As patterns of unusual transactions appear across multiple Attachments the case of trafficking becomes more convincing.

**Attachment 1:** There were an unusual number of transactions ending in a same cents value. There are 766 transactions listed ranging from $9.99 to $99.99. Of transactions of $9.00 or more conducted at Appellant, 30.8% percent ended in 99 cents. Based on the onsite visit, the store's inventory contains a profusion of single-serve, prepared food items and accessory foods. Appellant had many more transactions hit this scan than did six other convenience stores located less than a one mile radius from Appellant. When eligible items are priced to end in 99 cent values, apart from single item purchases that end in 99 cent values, it is difficult to arrive at 99 cent ending totals. One hundred and one (101) eligible 99 cent food items would need to be acquired to arrive at a 99 cent ending value total. When there are a disproportionate number of transactions that end in a same

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

cents value it appears that these transaction amounts are contrived. Therefore, in the absence of compelling evidence to the contrary, these transactions are indicative of trafficking.

Appellant contends:

- There are products which are very popular such as Enfamil which will likely account for the same cents value.
- This allegation has no merit in that my client has food items that happen to have a .99 as part of the price and it does not appear there was any effort made to compare the same with actual store products.

Appellant provided no evidence of its pricing of eligible foods and no photographs were advanced in reply to the Charge letter or in support of this appeal. Based on the inventory report, four of the highest priced items at Appellant ended in 99 cents including Enfamil at $24.99, American cheese at $12.99, roast beef deli meat at $10.99 and White Castle hamburgers $5.99. The FNS photos also show that turkey and chicken deli meat was priced at $9.99 per pound. Fifteen transactions listed are for $24.99 and could be single purchases of cans of Enfamil. Fifty-three transactions are for $12.99 and could be cheese purchases; 82 transactions are for $12.99 and could be for deli beef; and 102 transactions for $9.99 could be purchases of deli meat. While some transactions listed could be purchases of eligible single items ending in 99 cent values, the Attachment lists hundreds of unexplained transactions ending in 99 cent values.

The owner advanced invoices in response to the Charge letter. Retailer Operations determined the invoices did not provide sufficient evidence to show that Appellant stocked eligible foods in amounts that met its total SNAP redemptions. As such, the owner has not presented adequate evidence that the transactions on this Attachment are for eligible foods rather than the result of trafficking.

**Attachment 2:** Multiple purchase transactions were made too rapidly to be credible. This Attachment lists 20 data sets of two transactions each by two different card holders. All the data sets were completed in two minutes or less. Appellant has no optical scanner or adding machine to expedite the checkout process. The cashier must ring up each item individually, bag the items or hand them back to the recipient and swipe or manually process the transaction using the EBT card. Appellant has no shopping carts or handbaskets to assist customers with collecting eligible foods. The checkout area is bordered by a plastic opening and is about 3.5 feet by 2 feet. The physical layout appears to impede the rapid processing of multiple eligible items. For example transactions 787 and 788 totaled $147.65 and were processed in 53 seconds. Transactions 801 and 802 totaled $143.44 and were processed in 38 seconds. This is irregular.

Appellant contends:

- This allegation is simply too amorphous, particularly when you look at the number of transactions that correspond with when SNAP recipient received the benefits.
- The notion that the transactions were made too rapidly to be credible ignores the fact that the transactions correspond to dates SNAP recipients receive their benefits.

In New York State, recipients receive their benefits within the first nine days of the month including Sundays and holidays, according to the last digit of their case number. All of the data sets except one are dated during the first nine days of the month. This scan is not unusual due to the transaction

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

dates, but rather due to the rapid times between two SNAP transactions conducted by different households. When compared to six convenience stores in under a one mile radius, Appellant had 20 data sets hit on this scan versus zero data at five other convenience stores, and one data set at another store. Appellant also had a total SNAP redemption volume that exceeded by 21% to 246% the redemption volumes at six other same type nearby stores. This is unusual.

Attachment 3: Multiple SNAP purchase transactions were made from individual benefit accounts in unusually short time frames. This Attachment lists 79 transactions in 36 sets of two or more transactions, conducted by 28 different households ranging in set total amounts from $102.94 to $211.08. Multiple transactions conducted by the same households within a 24 hour period supports that Appellant was attempting to avoid single high dollar transactions, a practice that is indicative of trafficking.

Appellant contends:
- This allegation is simply too amorphous, particularly when you look at the number of transactions that correspond with when SNAP recipient received the benefits.
- 74 of the 79 transactions occurred on days that SNAP recipients receive their benefits.

Appellant is a convenience store. According to the record there are at least 40 other authorized food stores within a one mile radius of Appellant including two supermarkets. When compared to six nearby convenience stores, Appellant had 79 transactions hit the parameters of this scan as compared to 3, 4, 0, 0, 7 and 4 at the other nearby same type stores.

Appellant's average SNAP transaction amount for the review months was $11.98, 34% higher than the state average SNAP transaction amount for a convenience store for the review period was $8.95. Appellant's average SNAP transaction amount was 47% higher than the SNAP convenience store average in Broome County that for the period was $8.16. Appellant also had 450% higher dollar volume at $78,151.46 as compared to $14,216.35 in Broome County. The state average SNAP redemption volume of $20,117.97 for the same store type for the same time period was 288% lower than the average SNAP redemption volume at Appellant. This is irregular.

The data shows that of the 506 households flagged at Appellant, 321, or 63%, made a SNAP transaction at a large grocery, a supermarket or super store within one day of conducting a transaction at Appellant. Eighty-five percent or 432 households conducted a SNAP transaction at a large grocery, a supermarket or super store within three days of conducting a transaction at Appellant. Thus, the data supports that households did access other larger stores to meet their grocery needs. For example, one household transacted benefits at two different supermarkets and three super stores up to 5.48 miles from Appellant within three days of conducting a transaction at Appellant. Another household transacted benefits at three different supermarkets at a distance of 46 miles within three days of conducting a transaction at Appellant. A household transacted benefits at four different supermarkets and two super store at a distance of 146 miles from Appellant within one day of conducting a transaction at Appellant.

While some households may have conducted legitimate rapid transactions at Appellant, insufficient evidence was presented to support this argument. The vendor invoices were insufficient to prove that eligible food purchased during the review period met the total SNAP

7

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

redemption amount. Counsel states he does not have the agency analysis and as such cannot refute the claim that reimbursement for food items exceeded the store's inventory. A redacted Retailer Operations' case analysis was provided to counsel as part of the FOIA reply. As to Retailer Operations' assessment of the vendor invoices, the invoices submitted by the owner would presumably be available to counsel directly from the owner so that counsel can assess the estimated value of eligible foods the invoices document. Invoices of ineligible items such as cigarettes, health and beauty items, diapers, and paper products were excluded from the totals. Retailer Operations determined that with a 52% markup, the estimated total of eligible items was $55,311.46, while total SNAP redemptions at Appellant were more than $20,000 higher.

No itemized cash register tapes were provided as evidence of eligible food sales. No federal business tax returns or state tax filings were advanced, no beneficiary affidavits were advanced regarding multiple large purchases within 24 hours, and the owner provided no affidavit to support his position. Thus, the owner has not provided a preponderance of evidence that the transactions on this Attachment are for legitimate foods rather than the result of trafficking.

**Attachment 4: Excessively large purchase transactions were made from recipient accounts.** This Attachment lists 421 individual EBT transactions conducted by 188 different households ranging from $34.24 to $121.09. The transactions listed are for amounts that exceed the average SNAP transaction amount for the same store type in the same state by more than three or four times. The six nearby convenience stores had lower numbers of transactions flagged on this Attachment's parameters at 37, 88, 38, 12, 70 and 39. This is irregular.

Appellant contends:
- There is an alternative explanation that may be available but without the agency's analysis you are requiring my client to speculate on what theory is being employed to reach the conclusion that somehow translates into trafficking or some other violation.
- I request a hearing be held in Binghamton, New York, so my client has the ability to provide sworn testimony that no trafficking took place.

Appellant does not have shopping carts or handbaskets to facilitate the assembly of quantities of eligible items to make up the large dollar transactions listed. These items would need to be handled on a limited counter space in a small checkout area. The large dollar transactions remain questionable when considering the proximity of other larger authorized stores located in a radius of a mile from Appellant's location. A shopping analysis shows that recipients who frequented Appellant also shopped at larger stores, yet inexplicably spent large dollar amounts at Appellant. When one considers that SNAP benefit allotments are calculated to provide households with a bare minimum of food security, it is unreasonable that households would spend large sums of their monthly benefit allotments at a convenience store.

No customer affidavits were advanced to attest to legitimate large dollar SNAP transactions conducted at Appellant. No owner affidavit was provided with a rationale for the large dollar transaction amounts. While the owner provided vendor invoice documentation, these documents did not support that Appellant stocked sufficient eligible foods to cover its SNAP redemptions on any of the review months. No federal or state tax information was provided. No banking or credit card data was advanced by the owner to support this position that he was not trafficking. No food pricing information or photos were provided. No itemized cash register tapes were advanced.

8

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

Government analyses of stores caught in trafficking violations during actual onsite investigations have found that transactions involving trafficking consistently display particular characteristics or patterns. These patterns include in part those cited in the Charge letter Attachments. SNAP transaction data is provided to FNS via each state's EBT processor on a daily basis in a single layout and format that is standardized nationwide. The EBT transactions are validated and loaded into a database for subsequent analysis. The USDA system scans all retailer transactions at the beginning of each month for the prior month. The system uses pre-defined criteria or patterns for potential fraud detection. Pre-formatted reports provide information on those stores and transactions meeting the pre-established criteria. The Attachment patterns are based on transaction data devoid of racial information. There is no evidence in the record of redlining in the form of prohibited racial discrimination. The system provides spreadsheets and graphs that compare a specific store's data to the average for its firm type and to user-selected comparison stores.

The system utilizes mapping software which translates the address information into geo-codes and enables the user to map the locations of selected authorized stores and track recipient transaction locations. While the system identifies a retailer for further investigation, the actual case of trafficking is prepared by Retailer Operations' staff on the basis that the transaction patterns cannot be explained based on the store type, facility layout, inventory, and other factors. Users are also able to supplement and/or confirm their analytic documentation by accessing the applicable state's EBT processors' administrative systems through web access to the applicable state systems. That Retailer Operations used computer printouts of transaction data and other reports, in addition to store visit observations and an analysis of household shopping behavior, in rendering a finding that violations indicative of trafficking were occurring at Appellant, is as valid a means of establishing facts as direct evidence obtained through an on-site investigation and the eye witnessing of trafficking.

Based on this empirical data and in the absence of compelling evidence for such transaction patterns, a conclusion can be drawn, through a preponderance of evidence that the "unusual, irregular, and inexplicable" transactions and patterns cited in the Charge letter evidence trafficking as the most likely explanation. Nevertheless, transactions having such characteristics are sometimes the result of legitimate purchases of eligible food items, and this is why opportunities are afforded to charged retailers to explain and provide evidence of the legitimacy of the questionable transactions cited. In this case Retailer Operations determined that the vendor invoices did not outweigh the evidence in the record.

### Hearing, Due Process and Constitutionality

The agency eliminated in-person meetings with designated review staff via regulations effective September 8, 2003. At that time it was found that there are limited locations where such meetings occurred and most firm owners that requested such meetings had to travel long distances to participate in such. The Department determined that the travel cost disparity of those retailers located near review offices and those located a long distance away placed many retailers at a disadvantage. However, owners can and do communicate by telephone with the designated reviewers in conjunction with the submission of written documentation. Counsel contends that Appellant has been denied due process. In this regard, the disqualification of Appellant is neither a criminal nor civil action, but rather an administrative action imposed against the firm as a result of evidence of SNAP violations. The agency directs that only after

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

careful and complete analysis of data and information from which appropriate conclusions are logically derived, will a firm be issued a Charge letter. In the present case, the record shows that Retailer Operations duly implemented the relevant assessments in pertinent detail. The firm was then given the opportunity to reply to the charges and provide any information it deemed appropriate in justifying as legitimate the transaction activity detailed in the Charge letter Attachments. The owner replied to the Charge letter by submitting vendor invoices. After considering the evidence of the case, Retailer Operations determined that permanent disqualification was warranted.

The regulations at 7 CFR § 278.6(c) state, "in the case of a firm subject to permanent dis-qualification under paragraph (e)(1) of this section . . . the determination shall inform such a firm that action to permanently disqualify the firm shall be effective immediately upon the date of receipt of the notice of determination from FNS, regardless of whether a request for review is filed in accordance with part 279 of this chapter." Therefore, the regulations do not allow the disqualification to be stayed as requested by counsel.

After the Determination letter was issued, a second level of due process involves an administrative review. Appellant availed itself of this option. The purpose of the administrative review process is to ensure that firms aggrieved by adverse actions have the opportunity to have their position fairly considered by an impartial designated reviewer prior to that adverse action becoming final. Appellant has been duly given, and has taken, the opportunity to present whatever evidence and information it deems pertinent in support of its position that the adverse action be reversed. Therefore, the evidence and information that Appellant presented to Retailer Operations, as well as all information submitted subsequently, has now been considered in this administrative review in rendering the final agency decision in this case. Appellant has exercised its opportunity to reply to the Charge letter and its administrative review rights, and by doing so has availed itself of the full complement of the agency's statutory obligations with regard to due process.

Administrative review of FNS determinations against SNAP retailers is authorized under Section 14(a)(5) of the Food and Nutrition Act of 2008. The regulations at 7 CFR Part 279 have been promulgated pursuant to the Act. The designated reviewer will make a final determination using the process provided for in the Act and the cited SNAP rules. Neither the Act, as amended, nor the regulations pursuant thereto, provide for evidentiary proceedings at the administrative level of review. Therefore, such proceedings are not included in the administrative review process. Rather, the Act and regulations provide that any retailer that feels aggrieved by final agency decision can appeal the decision, and may seek judicial review in federal district court or a state court of record having competent jurisdiction. In such event, trial de novo proceedings ensure the retailer of an evidentiary hearing on the agency action at issue.

The administrative review process does not include an assessment of the constitutionality of the laws and regulations under which the agency imposed adverse actions, but rather whether the agency actions undertaken were proper pursuant to those laws and regulations, and sustainable by a preponderance of evidence. This office does not have the authority to assess whether the United States Congress in its enactment of legislation has conformed to Constitutional mandates. Challenges to the laws and regulations governing the SNAP are more appropriately the province of judicial review. Accordingly, no further findings or conclusions are rendered in this regard.

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM

NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123

RECEIVED NYSCEF: 09/07/2017

SNAP authorization is an administrative privilege, granted upon proof of eligibility and continued proof of compliance with the governing laws and regulations. The USDA has the obligation to safeguard the public's trust and financial interests. The agency labors to do so by diligently operating the Program in accord with the statute and the regulations promulgated to implement the provisions thereof. Within this context, while due process is honored, the agency is not burdened with proving to Appellant's satisfaction that FNS has correctly imposed the sanction at issue. Rather it is Appellant's burden to demonstrate that it has not engaged in SNAP trafficking by presenting a preponderance of evidence of same. Asserting that the USDA has not adequately proven its case does not disprove trafficking. Since permanent disqualification is warranted on the first occasion of trafficking, it is Appellant's burden to raise material issues of fact as to each of the Attachments set forth as suspicious by Retailer Operations. This burden has not been met.

## CIVIL MONEY PENALY

Retailer Operations determined that Appellant was not eligible for a trafficking civil money penalty according to the terms of Section 278.6(i) of the SNAP regulations. The owner did not submit documentation to prove that Appellant met the trafficking CMP requirements as stipulated in the regulations at 7 CFR Section 278.6(i). Accordingly, Retailer Operations determined that Appellant did not qualify for a civil money penalty in lieu of a permanent disqualification.

Counsel requested that consideration be given for a civil penalty "if indeed my clients have breached SNAP regulations inadvertently." This request was however not accompanied by any documentation that Appellant met the trafficking CMP requirements as stipulated in the regulations at 7 CFR Section 278.6(i).

## CONCLUSION

Retailer Operations' analysis of Appellant's SNAP transaction record was the primary basis for its determination to permanently disqualify Appellant. This data provided substantial evidence that the questionable transactions during the review period had characteristics that are consistent with trafficking violations in SNAP benefits. Under review is the evidence available in the record including items such as: onsite store visit reports and photographs, transaction scan data, system comparison reports, recipient SNAP transaction histories, Retailer Operations' analysis of the case, the assessment of the vendor invoices, the FOIA response and the contentions advanced by counsel. Based on review of the record, and in the absence of a preponderance of compelling evidence for the legitimacy for such transaction patterns, a conclusion was drawn, that the "unusual, irregular, and inexplicable" transactions and patterns cited in the letter of charges evidence trafficking as the most likely explanation. Therefore, the decision to impose a permanent disqualification against Appellant is sustained.

Retailer Operations also determined that Appellant was not eligible for a trafficking civil money penalty according to the terms of 7 CFR Section 278.6(i) of the SNAP regulations. Under review, the denial of a trafficking CMP is deemed correct.

## RIGHTS AND REMEDIES

Section 14 of the Food and Nutrition Act of 2008 and Section 279.7 of the regulations (7 CFR § 279.7) deal with the applicable rights to a judicial review of this determination. Please note that if a

FILED: BROOME COUNTY CLERK 09/07/2017 11:30 AM
NYSCEF DOC. NO. 3

INDEX NO. EFCA2017002123
RECEIVED NYSCEF: 09/07/2017

judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner resides or is engaged in business, or in any court of record of the State having competent jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

M. Viens                                    August 8, 2017
ADMINISTRATIVE REVIEW OFFICER